CALUMET CONSTRUCTION CORPORATION, Plaintiff-Appellant, v. THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—89—1933

Opinion filed September 30, 1991.

O'Brien, O'Rourke, Hogan & McNulty, of Chicago (Donald V. O'Brien and Michael Gilman, of counsel), for appellant.

Jack L. Shankman and James B. Murray, both of Metropolitan Sanitary District of Greater Chicago, of Chicago, for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

On September 15, 1983, plaintiff, Calumet Construction Corporation, entered into a contract with defendant, The Metropolitan Sanitary District. In accordance with the contract, plaintiff agreed to construct six sludge digestion tanks, three boilers, a methane gas compressor building and to perform rehabilitation work on 12 existing sludge tanks. Plaintiff agreed to perform these services at a cost to defendant of $22,575,000 and to complete the work within 900 days.

The United States Environmental Protection Agency (hereinafter EPA) funded a major percentage of the expenditures for the project. In accordance with its funding guidelines, the contract contained the standard Federal appendices (appendix B), as well as general condition provisions. The "suspension of work" clause in appendix B provided that an "equitable adjustment" could be made for delay damages except where such an adjustment was provided for or excluded

under any other provision of the contract. Article 27 of the general conditions provisions specifically listed what damages were recoverable due to delay by defendant.

Plaintiff did not complete the project within the 900-day period due to problems attributable to defendant. Plaintiff charged that on October 10, 1983, defendant directed it not to proceed on the sludge grinding system and that directions to continue the project were not given until June 28, 1984. Plaintiff further charged that defendant issued a change order without extending the time within which the modification should be completed. Plaintiff asserted that these actions and others by defendant caused delay damages and that it incurred extra work as a direct result of these problems.

Plaintiff filed a complaint against defendant seeking declaratory relief for damages resulting from the delays and interference with its performance. The complaint was filed before the contract was substantially performed and sought "equitable adjustments" in the contract price and performance time totaling $4,300,000.

On January 17, 1989, defendant filed a motion for partial summary judgment. Defendant alleged that plaintiff was precluded from receiving an "equitable adjustment" to the contract under the "suspension of work" clause of the Federal appendix to the contract, and that plaintiff's delay damages were limited by article 27 of the general conditions provisions.

On January 27, 1989, the trial court granted defendant's motion for partial summary judgment. The court held that article 27 of the general conditions applied to the suspension of work "equitable adjustment" provision of the contract; therefore, plaintiff's damages for delay were precluded. The court also held that the exclusionary language of article 27 applied to the provision covering "changes and differing site conditions." Thereafter, plaintiff filed a motion to reconsider and a motion requesting leave to file an amended complaint. These motions were denied. The parties reached a settlement; however, they reserved the right to appeal the court's January 27, 1989, ruling. On July 11, 1989, plaintiff filed its appeal.

Plaintiff argues on appeal that the trial court erred in finding that the "no damages for delay" general conditions provisions of the contract barred it from recovering under one of the "equitable adjustment" provisions of the same contract. Defendant does not deny that the delays complained of were attributable to it; however, defendant maintains that any recovery was properly limited by the language of article 27 of the general conditions of the contract and the "suspension of work" clause in the Federal appendix to the contract.

Article 27 of the general conditions of the contract provides in pertinent part:

"Should the contractor be obstructed or delayed in the commencement, prosecution or completion of the work hereunder by any act or delay of the Sanitary District, or by inability, with the exercise of due diligence; to obtain necessary railroad and transportation facilities, *** the times fixed in the Agreement for the completion of said work to the extent specified shall be extended for a period equivalent to the time lost by reason of any of the aforesaid causes mentioned ***.

* * *

The Contractor shall not be entitled to any damages or compensation from the Sanitary District except on account of any delay or delays resulting from any act or delay of the Sanitary District or other parties under contract with the Sanitary District, and such damages shall be limited solely to premiums actually paid by the Contractor on his bond and for wages and salaries of employees and other extra expenses of the Contractor that are necessary only for the proper maintenance of the work and of the plant and equipment of the Contractor during or on account only of a delay or delays caused by the Sanitary District or other contractors for said Sanitary District."

The "suspension of work" clause provides:

"(b) If the performance of all or any part of the work is suspended, delayed or interrupted for an unreasonable period of time by an act of the recipient in administration of this subagreement, an adjustment shall be made for any increase in the cost of performance of this subagreement (excluding profit) necessarily caused by such unreasonable suspension, delay or interruption and the contract modified in writing. However, no adjustment shall be made under this clause for any suspension, delay or interruption to the extent ***. *** (2) for which an equitable adjustment is provided for or excluded under any other provision of this subagreement."

The appendix to the contract defines "subagreement" as:

"A written agreement between an EPA recipient and another party (other than another public agency) and any lower tier agreement for services, supplies, equipment, or construction necessary to complete the project. Subagreement include[s] contracts and subcontracts for personal, and professional services, agreements with consultants, and purchase orders."

Plaintiff contends that the clause contained in the suspension of work "equitable adjustment" provision refers solely to the other provisions contained in the appendix, and not to the general conditions of the contract. Plaintiff maintains that there are only three provisions of the contract which refer to "equitable adjustment" and that all three are contained in appendix B. He argues that because article 27 of the general conditions does not use the term "equitable adjustment," the "suspension of work" clause cannot be construed to refer to article 27.

■ It is a well-established principle in the law of contracts that a construction should be adopted which harmonizes all the various parts so that no provision is deemed conflicting with or repugnant to, or neutralizing of any other. (*Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, 906, 392 N.E.2d 126.) Clauses in construction contracts limiting damages are in the public interest by protecting public agencies against vexatious litigation based on claims, real or fancied, that the agency has been responsible for unreasonable delays. *Anthony P. Miller, Inc. v. Wilmington Housing Authority* (1958), 165 F. Supp. 275.

■ In this case, the contract in dispute involved delays in a construction project. As a recipient of EPA funding for the construction project, plaintiff was bound by the appendix to that contract, specifically, the "suspension of work" clause. The "suspension of work" clause is a federally required provision which is included in all construction contracts that receive EPA funding. That clause clearly states that no "equitable adjustment" for delays will be made if an adjustment is provided for or excluded under any other provision of the subagreement. As stated earlier, a subagreement is defined in the appendix as a written agreement between an EPA recipient and any lower tier agreement for services, supplies, equipment or construction necessary to complete the project.

Plaintiff maintains that this provision should be read to apply only to Federal clauses and not to the entire contract. Plaintiff offers no authority to support this assertion, and we do not feel compelled to construe the language of the "work suspension" clause to impose that restriction. If the "suspension of work" clause was intended only to refer to Federal clauses, it could easily have so stated.

Having determined that the "suspension of work" clause is not limited in its application to only Federal clauses, we discuss whether that clause is applicable to the general conditions of the contract, article 27. Plaintiff maintains that because the term "equitable adjustment" is not used in article 27, this court cannot interpret the "sus-

pension of work" provision to refer to that article. Plaintiff asserts that defendant drafted the contract and could have specified in unambiguous terms that no "equitable adjustment" would be granted for delay.

As we noted earlier, the general conditions of the contract, specifically article 27, limit a contractor's recovery for delay damage.

"Recovery is limited to premiums actually paid by the contractor on his bond and for wages and salaries of employees and other extra expenses of the contractor that are necessary only for the proper maintenance of the work and of the plant and equipment of the contractor during or because of the defendant's delay."

Plaintiff cites *C.H. Leavell & Co. v. United States* (1976), 530 F.2d 878, for the proposition that the Federal government provides a contractual basis to compensate contractors for government-caused delays by incorporating an "equitable adjustment" provision in its construction contracts. Plaintiff also cites *S.N. Nielson Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 410 N.E.2d 40, for the proposition that contractual remedies should be broadly construed to achieve their intended goal. However, here the contractual remedy for delay was specifically included in article 27. Therefore, we find no need to broadly construe the contractual remedies.

In *Granite Construction v. MSDGC* (N.E. Ill. 1982), No. 80 C 5877, plaintiff argued that delay damages should have been calculated pursuant to the Federal "suspension of work" clause instead of article 27 of the contract because the two provisions conflicted with each other. The court held that the clauses did not conflict and that article 27 controlled the measure of delay damages.

Plaintiff's reliance on *C.H. Leavell & Co.* is unpersuasive. In that case, the clauses at issue were the "work suspension" clause and the "funds available" clause. The "funds available" clause provided that in the event that there were not sufficient funds to cover the project, the owner was not liable for damage caused by any resulting delay. The court held that the "funds available" clause did not bar the contractor from receiving an "equitable adjustment." That case is distinguishable from the instant case. In this case, defendant directed plaintiff to discontinue its work on the construction project and also issued a change order further delaying completion of the project. Moreover, the defendant's contract here specifically stated what damages were recoverable if the project was delayed by defendant.

Plaintiff's reliance on *Ruffin Woody & Associates, Inc. v. Person County* (1988), 92 N.C. App. 129, 374 S.E.2d 165, is also misplaced.

The contract there made the architect's decisions subject to arbitration and mandated arbitration of all claims or disputes unless the parties mutually agreed otherwise. However, the general conditions provision of the contract provided that the architect/engineer's decision was "final and conclusive, except as herein otherwise expressly provided." The court determined that there was a conflict between the provisions and that the general conditions controlled.

■ In this case, we find no conflict between the general conditions of the contract and the Federal appendix or "work suspension" provision. Further, unlike the contract in *Ruffin*, the Federal "suspension of work" clause in this contract clearly allowed for an "equitable adjustment" to be provided or excluded by any other provision in the contract. Moreover, Illinois and Federal courts have recognized that the amounts recoverable under an "equitable adjustment" clause can be limited by other provisions of the contract. (*Blinderman Construction Co. v. MSDGC* (1988), No. 82 CH 1183; *Granite Construction v. MSDGC* (N.E. Ill. 1982), No. 80 C 5877.) Therefore, we hold that the general conditions provisions of the contract did not conflict with the "suspension of work" provisions and that plaintiff's recovery for delay damages was properly limited by article 27 of the general conditions provisions.

■ Plaintiff argues in the alternative that its remedy for delay damages is not precluded by other provisions of the "equitable adjustment" clauses. Plaintiff relies on the "changes and differing site conditions" provisions and contends that its complaint seeks to recover costs created by changes that led to disruption and delay.

We again point out that the Federal "changes" and "changed conditions" clauses of the contract here provide for an "equitable adjustment" where the contractor performs unspecified extra work. However, the damages recoverable in that instance are set forth in articles 7 and 8 of the general conditions and provide that the contractor may recover cost of labor plus 15% markup, the cost of materials plus 10% markup, and the actual cost of equipment. This measure of damages has been held to apply to construction contracts. (*Walsh Construction Co. v. MSDGC* (1980), No. 79 L 5832.) For the foregoing reasons, we find that plaintiff's recovery was properly limited by the general conditions provisions of the contract.

Plaintiff next argues that the trial court erred in denying it leave to file an amended complaint. Specifically, plaintiff asserts that by granting partial summary judgment in favor of defendant, the judgment rendered was nonfinal and capable of being amended.

■ The right of a party to amend its complaint is a matter within the sound discretion of the trial court. (*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10.) In order that litigants may fully present their causes of action and settle their controversies on the merits, the greatest liberality should be provided in allowing amendments. (*Ryan v. Mobil Oil Corp.* (1987), 157 Ill. App. 3d 1069, 510 N.E.2d 1162.) The court's determination will not be disturbed on appeal except where there is a clear or manifest abuse of that discretion. *Baker v. Walker* (1988), 173 Ill. App. 3d 836, 528 N.E.2d 5.

■ Here, the plaintiff initially sought a motion for partial summary judgment to determine if the damages recoverable by it would be calculated in accordance with the terms of the contract provisions. The court ruled that the damages were limited by the contract provisions. Plaintiff sought leave to amend its complaint by alleging bad faith. This occurred after discovery was closed and the case was prepared for trial. There is no evidence in the record to support a pleading of bad faith, nor did the evidence that plaintiff produced support this allegation. Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted. *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 360 N.E.2d 551.

Because the evidence produced by plaintiff did not support an allegation of bad faith, we cannot say that the trial court abused its discretion in failing to allow plaintiff to amend its complaint.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.