RESOLUTION TRUST CORPORATION, Plaintiff-Appellee, v. RICHARD M. HOLTZMAN *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—91—2539

Opinion filed June 2, 1993.—Rehearing denied July 19, 1993.

Robert K. Blain, of Law Offices of Robert K. Blain, of Chicago, for appellants.

Daniel S. Hefter and Edward M. Benyas, both of Hefter & Radke, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Resolution Trust Corporation,[1] filed an action to foreclose a mortgage secured by a multi-unit apartment building, title to which is in codefendant Harris Trust & Savings Bank, as trustee, under trust agreement known as trust No. 43840. Richard M. Holtzman (Holtzman) guaranteed the mortgage note and was joined as a defendant.

The trial court entered judgment for foreclosure in favor of plaintiff, later confirmed the sheriff's sale in the sum of $414,800 and entered a deficiency judgment against Holtzman for $398,207.67 on the guaranty.

On appeal, defendants contend that the trial court erred in (1) denying defendants leave to file an amended affirmative defense and

---

[1]Resolution Trust Corporation was substituted for the original plaintiff, Great American Savings & Loan Association, after control of Great American was assumed by Resolution Trust Corporation during the pendency of this litigation.

counterclaim alleging plaintiff's breach of a duty of good faith and fair dealing, and (2) approving the sheriff's sale which defendants allege yielded a grossly inadequate bid below the market value of the subject premises.

For the reasons which follow, we affirm the trial court's judgment of foreclosure but reverse the order confirming the sale to allow the trial court to afford a hearing to defendants by reason of sections 15—1508(b)(2) and (b)(3) of the Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1989, ch. 110, pars. 15—1508(b)(2), (b)(3)).

On December 9, 1988, defendants obtained a $900,000 loan from plaintiff's predecessor to purchase a residential apartment building located at 1029 West Bryn Mawr in Chicago. The loan was secured by a mortgage in favor of plaintiff's predecessor as the mortgagee and defendant Harris Trust & Savings Bank, as trustee, was the mortgagor and the mortgage note was personally guaranteed by defendant Holtzman.

On or about June 1, 1989, defendants defaulted in payments required under the mortgage, a balance of $677,730.47 being then due. Plaintiff then filed a complaint to foreclose.

Thereafter, on February 14, 1990, plaintiff filed an amended complaint seeking in count I to foreclose the mortgage and in count II to obtain a judgment against the personal guarantor (Holtzman) for any deficiency.

Defendants filed their answer to plaintiff's amended complaint and an affirmative defense. Defendants admitted default in the payment of the installment which became due on June 1, 1989. However, by affirmative defense, defendants asserted that plaintiff breached an oral agreement by refusing to permit the marketing of the apartments as condominiums which would have required plaintiff to consent to the filing of a condominium declaration and subordination of the mortgage to it and provide for partial releases from the mortgage loan. Plaintiff claims that the continued ownership and development of the premises were not otherwise economically feasible.

Thereafter, plaintiff filed a motion for judgment which included a prayer that the affirmative defense be stricken by reason of the merger into the mortgage of any previous oral agreement.

On August 15, 1990, defendants asked leave to file amended affirmative defenses which essentially reiterated their original affirmative defense that plaintiff had breached an oral agreement by refusing to allow for the conversion of the premises into condominiums and additionally suggested a breach of paragraph 12 of the mortgage document, which authorized the plaintiff, at its option and without giving

notice, to extend payment or reduce payments, release any person as to any indebtedness, accept renewal notes, modify the terms of payment from time to time, take on additional security, or release any part of the encumbered property from the lien of the mortgage.

On September 17, 1990, the trial court entered an order granting plaintiff's motion for judgment, implicitly striking defendants' affirmative defenses, and denying defendants' then pending motion for leave to file the August 15 amended affirmative defenses. The judgment order directed a sheriff's sale upon defendants' failure to redeem and expressly retained jurisdiction of the subject matter for the purpose of enforcing the judgment order.

Fifty-three days after the entry of the judgment for foreclosure, defendants filed a motion to vacate that judgment and for leave to file additional amended affirmative defenses and counterclaim. The original affirmative defenses alleged plaintiff's failure to comply with the terms of an oral agreement to allow the mortgage to be subrogated to the condominium declaration while the later affirmative defenses alleged plaintiff's contractual breach of a duty of good faith and fair dealing.

Defendants' affirmative defenses contained exhibits of letters from defendants to plaintiff requesting plaintiff's consent to condominium conversion and a claim that four or five units out of eight had already been accounted for and their sales could be closed to provide plaintiff with sufficient funds to satisfy the entire mortgage obligation. Additionally, letters from plaintiff were attached indicating plaintiff's agreement to execute condominium conversion documents, place them in escrow, and provide for them to be spread of record upon closing and payment of the proceeds of the various real estate transactions defendants allegedly were negotiating.

On December 7, 1990, the trial court denied defendants' motion to vacate and determined that the theory of breach of good faith and the covenant to deal fairly was not properly "postulated in this mortgagor/mortgagee relationship."

On December 12, 1990, the sheriff's sale was held and the only bid at the sale was submitted by plaintiff in the amount of $414,800. After the sale upon these terms, there remained a deficiency of $398,207.67 on the mortgage indebtedness.

Thereafter, plaintiff sought an order confirming the sale and applied for entry of a judgment on count II of the complaint which would impose a deficiency judgment against defendant Holtzman on his personal guarantee on the amount of the deficiency. In its response to plaintiff's motion, defendants asserted that the amount of

plaintiff's accepted bid was inadequate on the basis of prior appraisals of the property, that the court should allow discovery with respect to the fair market value of the property and provide a full evidentiary hearing in that regard.

On February 14, 1991, the trial court entered an order confirming the sheriff's sale and a judgment against Holtzman on count II of plaintiff's complaint in the amount of $398,207.67 plus interest.

On appeal, defendants first assert that the trial court erred in its December 7, 1990, order by denying them leave to present their affirmative defenses based on plaintiff's alleged breach of its duty of good faith and fair dealing.

Plaintiff contends that the denial of defendants' motion to file amended affirmative defenses and counterclaim was proper because defendants raised no legally cognizable defense or counterclaim, and because defendants' motion was untimely since the trial court had already entered judgment on this matter on September 27, 1990. Plaintiff argues that the trial court correctly ruled "that a lender has no implied covenant of good faith and fair dealing to relinquish a part of its security prior to receipt of payment in full."

■ The parties correctly agree that the decision to grant leave to file amended affirmative defenses and a counterclaim rests within the sound discretion of the trial court and such decision will not be disturbed absent an abuse of that discretion. *Champaign National Bank v. Landers Seed Co.* (1990), 194 Ill. App. 3d 1019, 551 N.E.2d 1122 (no abuse of discretion to deny the defendants' request to file a third affirmative defense).

Amendment of pleadings is not an absolute right despite our State's liberal policy of permitting amendment of pleadings. (*In re Estate of Sutera* (1990), 199 Ill. App. 3d 531, 540, 557 N.E.2d 371.) Rather, amendment may be allowed only at the trial court's discretion. *Sutera*, 199 Ill. App. 3d at 540.

Before the entry of final judgment, a trial court has broad discretion in motions to amend pleadings. *Tongate v. Wyeth Laboratories* (1991), 220 Ill. App. 3d 952, 970, 580 N.E.2d 1220 (no abuse of discretion to deny plaintiffs' request to amend their complaint five weeks before trial).

■ The right to amend pleadings, however, is not absolute. (*Trans World Airlines, Inc. v. Martin Automatic, Inc.* (1991), 215 Ill. App. 3d 622, 627, 575 N.E.2d 592 (*TWA*).) "The test to be applied in determining whether the trial court's discretion was properly exercised is whether allowance of the amendment furthers the ends of jus-

tice." *TWA*, 215 Ill. App. 3d at 628 (no abuse of discretion in denying defendant's motion to file a second amended counterclaim).

In its determination of whether to allow amendment to pleadings, the trial court can consider the timeliness of such request (*TWA*, 215 Ill. App. 3d at 627), previous opportunities to assert a claim, and the ultimate efficacy of the claim (*Champaign National Bank*, 194 Ill. App. 3d at 1027).

As to the timeliness, we have already noted that the motion was filed 53 days after the entry of judgment. Section 2—616 of the Code of Civil Procedure authorizes amendment at any time before final judgment except as to amendments to conform the pleadings to the proofs. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—616(a), (c).) We shall not rest our opinion on whether or not the judgment of foreclosure was a final judgment within the meaning of section 2—616 and could only be vacated by a section 2—1401 petition (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401). We believe defendants have not been timely for the purposes of a motion under section 2—1203. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203.) The judgment of foreclosure might not meet the definition of final judgment for the purpose of instituting an appeal but does meet the standard for section 2—616. Ill. Rev. Stat. 1989, ch. 110, par. 2—616.

In any event, the trial court considered the ultimate efficacy of defendants' claims and found that the tendered affirmative defenses did not advance a cognizable legal theory which would abate the foreclosure. We agree.

■■ ■ A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt. (*In re Application of Busse* (1984), 124 Ill. App. 3d 433, 440, 464 N.E.2d 651.) The mortgage instrument is merely a contract as between the immediate parties. (*Petkus v. St. Charles Savings & Loan Association* (1989), 182 Ill. App. 3d 327, 330, 538 N.E.2d 766.) The rules of contract provide that the parties to a contract are presumed to have intended what their language clearly imports so that a trial court has no discretion to require parties to accept any terms other than those in their contract. *Bornstein v. First United* (1992), 232 Ill. App. 3d 623, 630, 597 N.E.2d 870.

The mortgage instrument in the present case states that "upon payment in full, the mortgage will be released." Defendants admit that the mortgage does not contain any provision to consider partial release of the mortgage upon the renovation of individual units. Furthermore, defendants do not contend, nor could they, that the mortgage is ambiguous. See *Farmers & Mechanics Bank v. Davies* (1981),

97 Ill. App. 3d 195, 201, 422 N.E.2d 864 (if ambiguous, the mortgage should be construed against its maker).

The paragraph in the mortgage upon which defendants rely provides the lender with a series of options which at its sole discretion it may wish to exercise. Plaintiff could have allowed its mortgage to be subordinated to the condominium declaration, could have provided for partial releases, and could have had a greater understanding for defendants' economic problems. However, nothing in the mortgage documents requires a lender to soften its position or its heart.

When the terms of a contract are clear and unambiguous, they must be enforced as written and no court can rewrite a contract to provide a better bargain to suit one of the parties. *Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership* (1992), 225 Ill. App. 3d 317, 323, 587 N.E.2d 1169; *UIDC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 230, 490 N.E.2d 164 ("the court does not have the authority to rewrite the contract into one which the parties did not enter into").

While we may entertain sympathy for the mortgagor desperately seeking to vary the terms of the security instruments, we should be tempered by remembering that lender and borrower enjoy the freedom of the marketplace to negotiate whatever they wisely or foolishly believe is in their best interests and a court is powerless to alter the clear terms of a mortgage contract. *National Acceptance Co. of America v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 405, 243 N.E.2d 264.

Although every contract implies good faith and fair dealing (*First National Bank v. Sylvester* (1990), 196 Ill. App. 3d 902, 910, 554 N.E.2d 1063), the duty of good faith and fair dealing is, as conceded by defendants, a derivative principle of contract law. (*La Scola v. U S Sprint Communications* (N.D. Ill. 1990), 739 F. Supp. 431, 436.) While this obligation exists in every contract in Illinois, it is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions. *Calumet Construction Corp. v. Metropolitan Sanitary District* (1991), 222 Ill. App. 3d 374, 381, 581 N.E.2d 206; *Anderson v. Burton Associates, Ltd.* (1991), 218 Ill. App. 3d 261, 267, 578 N.E.2d 199.

■ Generally, problems involving the duty of good faith and fair dealing arise where one party to a contract is given broad discretion in performance. The doctrine of good faith then requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *Syl-*

*vester,* 196 Ill. App. 3d at 910-11; *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 990-91, 466 N.E.2d 958.

■■ Paragraph 12 of the mortgage upon which defendants rely did not repose in plaintiff the kind of discretion described in *Sylvester* and *Dayan.* Parties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith. (*Hentze v. Unverfehrt* (1992), 237 Ill. App. 3d 606, 611, 604 N.E.2d 536.) Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties. *Sol K. Graff & Sons v. Leopold* (1981), 92 Ill. App. 3d 769, 772, 416 N.E.2d 275.

In addition, we note that defendants' offer was not based upon clear and concrete terms but rather rested upon the speculation that the units could be more effectively marketed by a change in the form of ownership of the premises. It is not surprising that a cautious lender is reluctant to recast the loan based on the dreams and hopes of a developer, albeit a seemingly most sincere one.

For all the foregoing reasons, we find that the trial court did not abuse its discretion in disallowing defendants' affirmative defense of a breach of the covenant of good faith and fair dealing since such defense is inapplicable in the present case. See *Anderson,* 218 Ill. App. 3d at 267.

Second, defendants assert that the trial court erred in approving the sheriff's sale because the accepted selling price was so low as to demonstrate that justice was clearly not done.

■■ The Illinois Mortgage Foreclosure Law provides that following a sheriff's sale, the court shall enter an order confirming the sale unless the court finds that: (1) proper notice was not given; (2) the terms of the sale were unconscionable; (3) the sale was conducted fraudulently; or (4) justice was otherwise not done. (Ill. Rev. Stat. 1989, ch. 110, par. 15—1508(b).) The argument advanced by defendants is that the accepted bid was so low as to be unconscionable and that the large deficiency judgment, by reason of the low bid, resulted in justice not being done.

The parties correctly agree that the Illinois Supreme Court, even before the 1987 amendment to the Illinois Mortgage Foreclosure Law, in *Levy v. Broadway-Carmen Building Corp.* (1937), 366 Ill. 279, 288, 8 N.E.2d 671, held that courts have the discretion to disapprove a judicial sale "where the amount bid is so grossly inadequate that it shocks the conscience of a court of equity."

However, prior to the 1987 amendment, courts consistently held that mere inadequacy of price was not a sufficient reason to disturb a

judicial sale unless there were some other irregularities. Unless there was evidence of mistake, fraud or violation of duty by the officers conducting the sale, price alone would not be sufficient cause to set aside a sale. (See, *e.g.*, *Illini Federal Savings & Loan Association v. Doering* (1987), 162 Ill. App. 3d 768, 771-72, 516 N.E.2d 609 (and cases cited therein).) This rule is premised on the policy which provides stability and permanency to judicial sales, and on the well-established acknowledgment that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss. *Illini Federal*, 162 Ill. App. 3d at 771-72.

In the present case, the sheriff's sale was held on December 12, 1990, and the accepted highest bid was $414,800. Defendants maintain that this bid should be compared with an early 1988 appraisal, which valued the property at $1.2 million. Plaintiff submits that the 1990 appraisal which valued the property at or near the time of sale at $488,000 is the pertinent comparison figure.

■ We must acknowledge that the General Assembly intended to create a new, but limited, level of inquiry. Courts were directed to conduct a hearing on the confirmation of the foreclosure sale. The court is empowered under certain circumstances to examine whether the terms of sale were unconscionable. The legislature, however, did not intend to impose upon the court the kind of inquiry provided in the Uniform Commercial Code that all sales "must be commercially reasonable" (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3); *Standard Bank & Trust Co. v. Callaghan* (1988), 177 Ill. App. 3d 973, 532 N.E.2d 1015) or in the Bankruptcy Act, which requires aggressive advertising of the proposed sale and a foreclosure sale price of "a reasonably equivalent value" for the property (11 U.S.C. §548(a)(2)(A) (Supp. IV 1986); *In re Bundles* (7th Cir. 1988), 856 F.2d 815).

Even after the 1987 amendment, courts have cited *Illini Federal* with approval. In *Lyons Savings & Loan Association v. Gash Associates* (1989), 189 Ill. App. 3d 684, 545 N.E.2d 412, the defendant submitted fairly recent appraisals by affidavit that showed value of the premises at 25% to 45% in excess of the judicial sale. Affidavits were tendered by the plaintiff placing the value just below the bid price. Notwithstanding this disparity, the *Lyons* court affirmed the trial court's determination that the bid was not grossly inadequate. Although the disparity between defendants' appraisal and the bid price is greater in the instant case, the appraisal here is significantly more remote in time and accordingly, of less probative value.

■ Although the bid is only 34% of the old appraisal, it represents 84% of the more current appraisal. Before the 1987 statute, but on authority of *Levy*, this court declined to disturb a judicial sale which generated a best bid amounting to less than 33% of an appraised value of the property. *Glanz v. Taken* (1937), 293 Ill. App. 74, 11 N.E.2d 634.

Our courts can probably look forward to a plethora of mortgage foreclosures on many parcels which were the subject matter of loans predicated upon inflated or suspect real estate appraisals submitted by borrowers to financial institutions whose assets are now operated by the Resolution Trust Corporation.

We do not believe that the General Assembly intended to require an extended evidentiary hearing after each sheriff's sale. To determine the extent of the hearing to be afforded the mortgagor, the court should look to the defendant's petition or motion, and if there is an allegation of a current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable, then a hearing should be afforded the defendant. On the other hand, if the allegation of unconscionability rests on an appraisal rendered remote in time, the requisite of a formal hearing is not required under the amendatory act.

Defendants in the present case offer more than merely a 34-month-old appraisal. They also allege that during 1989 and 1990, buyers of units were available and, in at least one case went to contract, at prices which would have fully satisfied the mortgage obligation upon the sale of only four of eight units. Only when the less-than-current appraisal is coupled with these later potential sales can we conclude that defendants were entitled to an evidentiary hearing and limited discovery necessary to prepare for the narrow scope of the hearing for which we here provide.

We therefore affirm in part and reverse in part, remanding for a hearing in accordance with the views expressed herein.

Affirmed in part; reversed in part and remanded.

TULLY, P.J., and RIZZI, J., concur.