UNITED AIR LINES, INC., Plaintiff,

v.

ALG, INC., d/b/a Aviation Leasing Group, Inc., and Tajik Air Limited, Defendants.

No. 94 C 3619.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 4, 1995.

Christina M. Tchen, Matthew Robert Kipp, Esther N. Iwerebon, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for United Air Lines, Inc.

John Scott Myers, Richard Thomas Mitchell, O'Connor, Schiff & Myers, Chicago, IL, Howard D. Lay, Kansas City, MO, for ALG Inc. dba Aviation Leasing Group, Inc., Tajik Air Limited, ALG Trust.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

United Air Lines ("UAL") brings this twelve-count complaint against Aviation

Leasing Group, Inc. ("ALG") and Tajik Air Limited ("TAL"). TAL has discontinued its defense of the case and defaulted to both UAL and ALG.[1] UAL now moves for summary judgment on its five counts against ALG, as well as on three of ALG's counterclaims. In addition, with regard to Count IV of ALG's counterclaims, UAL moves for judgment on the pleadings. For the reasons set forth below, UAL's motion for summary judgment is granted in part and denied in part, and its motion for judgment on the pleadings is denied.

## I. Background

■ As the events surrounding this litigation have been thoroughly recited in our previous opinions, *see United Air lines, Inc. v. ALG, Inc.*, 873 F.Supp. 147 (N.D.Ill.1995); *United Airlines, Inc. v. ALG, Inc.*, No. 94 C 3619, 1994 WL 583324 (N.D.Ill. October 17, 1994), we limit our discussion to the facts necessary for resolving the instant motions.[2]

Beginning in September 1993, UAL and ALG negotiated for the lease of a Boeing 747 from UAL's reserves. In December, 1993, these negotiations culminated with UAL entering into an Operating Lease Agreement ("Lease") for one of these aircraft with ALG Trust—a Delaware trust formed by ALG for the sole purpose of leasing the aircraft from UAL and subleasing it to the eventual operator, TAL. In exchange for the use of the aircraft, ALG Trust agreed to pay basic rent, maintenance reserve payments, and any outstanding insurance premiums. Pl.'s 12(M) ¶¶ 22–32, 89. In the event of a default, ALG Trust also agreed to repay UAL for any legal fees and expenses incurred in pursuing its remedies under the Lease. *Id.* ¶ 35–37. Although the Lease contained an "AS–IS, WHERE–IS" clause[3]—wherein UAL explicitly declined to warrant the airworthiness or condition of the vehicle—Exhibit I to the Lease nonetheless required the aircraft to "have had permanently and properly repaired any damage to the Aircraft that exceeds the requirements of the most recent FAA-approved maintenance program for the Aircraft for operation without restrictions." Def.'s 12(N), Ex. B, § 1(b)(ii). On December 3, 1993, ALG Trust accepted delivery of the aircraft and memorialized its acceptance in both an Acceptance Certificate and Supple-

---

**1.** UAL's motion for default was granted on May 16, 1995, and ALG's motion for default on its cross-claims was granted on July 28, 1995. We have deferred entering judgment in a specific dollar amount until damages are proven.

**2.** Although many of the relevant facts are undisputed, ALG does challenge the veracity of several statements made by the plaintiff in its Local Rule 12(M) submission ("Pl.'s 12(M)"). However, a party cannot rebut a factual assertion made in the opponent's 12(M) statement by simply denying the statement, or claiming to have insufficient information to admit or deny the statement. Instead, a party opposing summary judgment must submit a response to each numbered factual statement contained in the movant's 12(M), "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(a). ALG's responses to paragraphs 12, 21, 30, 31, 40, 41, 55, 56, 79, 81, 90, and 95 of UAL's 12(M) fail to comply with this requirement, and thus are deemed admitted under Local Rule 12(N)(3). If material, we will note those factual contentions that are properly supported by ALG.

**3.** LESSOR LEASES AND LESSEE TAKES THE AIRCRAFT "AS–IS, WHERE–IS." LESSEE ACKNOWLEDGES AND AGREES THAT AS BETWEEN LESSOR AND LESSEE (A) THE AIRFRAME AND EACH ENGINE ARE OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY AND ACCEPTABLE TO LESSEE, (B) LESSEE IS SATISFIED THAT THE AIRFRAME AND EACH ENGINE ARE SUITABLE FOR ITS PURPOSES, ... (D) LESSOR HAS NOT MADE, NOR SHALL LESSOR BE DEEMED TO HAVE MADE, WHETHER BY VIRTUE OF HAVING LEASED THE AIRCRAFT AND THE AIRCRAFT DOCUMENTS UNDER THIS LEASE, ... ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE TITLE, AIRWORTHINESS, CONDITION, VALUE, DESIGN, OPERATION, MERCHANTABILITY OR FITNESS FOR USE FOR ANY PARTICULAR PURPOSE OF THE AIRCRAFT, ... AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE ... WITH RESPECT TO THE AIRCRAFT....

Complaint, Ex. A, § 4(a)(1).

ment No. 1 to the Lease. Pl.'s 12(M) ¶¶ 15–19. Both of these documents indicated that ALG Trust found the aircraft to be in good working order and in compliance with the terms of the Lease.

In conjunction with the execution of the Lease, UAL required ALG to enter into a Guarantee Agreement ("Guarantee"). The Guarantee stated that it was executed "in order to induce [UAL] to enter into the transactions contemplated by the Lease," and provided that:

> [ALG] absolutely, irrevocably and unconditionally guarantees, as primary obligor and not merely as surety, the due and punctual payment in full, observance and performance by [ALG Trust] of the Obligations (whether by stated due dates, by acceleration or otherwise) (including Basic Rent or payment of Supplemental Rent unpaid after the due date thereof), the forgoing guarantee (in respect of payment obligations) constituting hereby a guarantee of payment and not of collection.

Complaint, Ex. E, at 1. David Rowe, a vice president of ALG, signed the Guarantee on behalf of the company in December 1993.

UAL alleges that ALG Trust and ALG failed to make various payments of basic rent, maintenance reserves, and insurance premiums. UAL also claims that ALG failed to return the aircraft, requiring UAL to ferry the aircraft from the United Kingdom to the United States. UAL sent ALG a notice of default in May 1994, and filed the instant action in June 1994 against ALG and TAL. In a letter dated July 6, 1994, ALG purported to rescind the Guarantee and the Lease, alleging that UAL failed to deliver an airworthy vehicle and attempted to interfere with a maintenance agreement between ALG and TAL.

## II. Discussion

### A. Counts I–V of UAL's Complaint and Counts I–III of ALG's Counterclaims

■ UAL now moves for summary judgment on its claims against ALG, as well as on ALG's counterclaims for rescission

(Count I), negligence (Count II), and breach of contract (Count III). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477. U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). The movant may satisfy this burden by presenting specific evidence on a material issue, or by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings; rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In ruling on a motion for summary judgment we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp.*, 33 F.3d 813, 815 (7th Cir.1994), and refrain from making credibility determinations, *see Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992).

■ In Counts I–V of its complaint UAL seeks to enforce the provisions of the Guarantee against ALG. In order to prevail, UAL must prove (1) the original indebtedness of ALG Trust, (2) ALG Trust's default, and (3) the guarantee of ALG Trust's debt by ALG. *See Continental Bank N.A. v. Everett,* 760 F.Supp. 713, 716 (N.D.Ill.1991), *aff'd,* 964 F.2d 701 (7th Cir.), *cert. denied,* 506 U.S. 1035, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992); *Juzwik v. Juzwik,* 140 Ill.App.3d 644, 94 Ill.Dec. 926, 929, 488 N.E.2d 1319, 1322 (1986) (citing *Mid–City Indus. Supply Co. v. Horwitz,* 132 Ill.App.3d 476, 87 Ill.Dec. 279, 285, 476 N.E.2d 1271, 1277 (1985)).[4] ALG does not dispute that ALG Trust failed to

---

**4.** The parties do not dispute that Illinois law supplies the rules of decision in this diversity case.

make several payments to UAL, including basic rent payments from February 1994 to the end of the lease term, maintenance payments on the amount of time the aircraft was in operation in January and February 1994, and various costs incurred by UAL in repossessing the aircraft and seeking payment from ALG. Pl.'s 12(M) ¶¶ 47–88.[5] UAL also submits copies of the Lease and the Guarantee in order to prove that ALG Trust was obliged to make these payments, and that ALG was required to make up for any shortfall by ALG Trust. However, ALG maintains that it cannot be held liable on the Guarantee, arguing that it is absolved from its obligation because of UAL's bad faith in procuring the Guarantee and preventing ALG Trust from completing its end of the bargain, and because UAL delivered an airplane to ALG Trust that did not meet the requirements of the Lease.[6]

We first address ALG's good faith and fair dealing arguments. Unless expressly disavowed, Illinois law implies a covenant of good faith and fair dealing into every contract, including guarantees. *LaSalle Nat'l Bank v. Metropolitan Life Ins. Co.*, 18 F.3d 1371, 1375 (7th Cir.1994); *Continental Bank N.A.*, 760 F.Supp. at 717; *Resolution Trust Corp. v. Holtzman*, 248 Ill.App.3d 105, 187 Ill.Dec. 827, 833, 618 N.E.2d 418, 424 (1993). However, this implied covenant does not create an overarching duty to be pleasant and amicable in one's business dealings. *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970

F.2d 273, 280 (7th Cir.1992); *Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 594 (7th Cir.1991). Rather, the duty merely requires the parties to act in good faith when exercising any discretion afforded to them by the contractual relationship. *River Valley Cookies*, 970 F.2d at 280; *Holtzman*, 187 Ill.Dec. at 833, 618 N.E.2d at 424; *Dayan v. McDonald's Corp.*, 125 Ill. App.3d 972, 81 Ill.Dec. 156, 169–70, 466 N.E.2d 958, 971–72 (1984).[7] The covenant does not by itself create an independent source of duties or a separate cause of action, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992), but constrains those who possess some discretion in fulfilling their contractual duties to "exercise that discretion reasonably and with proper motive, and … not [to] do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id.* (quoting *Dayan*, 81 Ill.Dec. at 170, 466 N.E.2d at 972); *Holtzman*, 187 Ill.Dec. at 833, 618 N.E.2d at 424; *see Chemical Bank v. Paul*, 244 Ill.App.3d 772, 185 Ill.Dec. 302, 308, 614 N.E.2d 436, 442 (1993). Thus, unless a party is alleged to have improperly exercised its contractually granted discretion, an opponent cannot defend against a breach of contract claim by invoking the duty of good faith and fair dealing. *Beraha*, 956 F.2d at 1443–44 (collecting cases); *Holtzman*, 187 Ill.Dec. at 833, 618 N.E.2d at 424; *Anderson v. Burton Assocs., Ltd.*, 218 Ill.

5. ALG does challenge UAL's calculation of maintenance reserves for January and February 1994, arguing that ALG Trust was not liable for periods of time that the aircraft was not in service. Def.'s 12(N) ¶ 5. UAL does not dispute this interpretation of the Lease, but maintains that the requested payments are based on the amount of hours that the aircraft was actually in operation. Pl.'s 12(N)(3)(b) ¶ 5.

6. UAL maintains that ALG cannot raise these arguments at this juncture, since the defendant neglected to assert them in its answer as an affirmative defense. *See* Fed.R.Civ.P. 8(c). Although the "[f]ailure to plead an affirmative defense results in a waiver of that defense," *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir.1991), such a harsh sanction is inappropriate where the plaintiff is not prejudiced by the timing of the argument. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir.1987); *Duncan v. Consolidated Freightways Corp. of Del.*, No. 94 C 2507, 1995

WL 530652, at *5 (N.D.Ill. Sept. 7, 1995) (permitting party to raise preemption argument for first time at summary judgment). The crux of ALG's defenses were raised in its answer to the complaint, and UAL has not demonstrated that it would suffer any prejudice from ALG's presentation of these arguments at this juncture. Accordingly, we decline to consider ALG's arguments waived.

7. Illinois courts have also cited the implied duty of good faith and fair dealing when articulating the following maxim of contract construction: "[W]here an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted." *Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958); *see Holtzman*, 187 Ill.Dec. at 833, 618 N.E.2d at 424 (describing implied duty of good faith "as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions").

App.3d 261, 161 Ill.Dec. 72, 76, 578 N.E.2d 199, 203 (1991).

In this case, ALG argues that two acts by UAL demonstrate its bad faith. First, it contends that UAL fraudulently induced David Rowe, a vice president of ALG, to sign the Guarantee, even though it was never discussed in UAL's negotiations with Farhad Azima—ALG's major stockholder, sole director, and chairman. Second, ALG claims that UAL failed to perform a necessary inspection of the aircraft before delivering it to ALG Trust, thereby preventing ALG Trust and TAL from learning of a latent defect in the landing gear until operations commenced. ALG claims that these latter acts led to significant adverse press coverage of TAL, doomed the operation, and prevented ALG Trust from meeting its obligations under the Lease.

■■■■■ ALG's first argument—that UAL breached the duty of good faith by fraudulently inducing one of ALG's officers to sign the Guarantee—is akin to putting a square peg in a round hole, since the alleged misconduct does not in any way involve an exercise of discretion by UAL. Similarly, ALG's second argument—that UAL prevented ALG Trust from fulfilling its obligations under the Lease by delivering a defective aircraft [8]—also cannot provide a defense for ALG based on the implied duty of good faith and fair dealing. Because ALG does not explain how UAL's actions, if true, constituted an abuse of any discretion granted by the Lease to UAL, we hold that the defendant cannot proceed with its defenses and counterclaims based on the implied duty of good faith and fair dealing. *Holtzman*, 187 Ill.Dec. at 833, 618 N.E.2d at 424 (noting that document at issue did not grant the kind of discretion sufficient to support a defense premised on implied duty of good faith and fair dealing); *Anderson*, 161 Ill.Dec. at 76, 578 N.E.2d at 203 (same).

However, this does not completely dispose of ALG's defenses and counterclaims. It is apparent from the pleadings and ALG's response to the motion for summary judgment that it also seeks to avoid liability by arguing that UAL broke the *explicit* terms of the Lease, not just its *implied* terms. ALG contends pursuant to Exhibit I of the Lease, the aircraft delivered by UAL was to "have had permanently and properly repaired any damage to the Aircraft that exceeds the requirements of the most recent FAA-approved maintenance program for the Aircraft for operation without restrictions." The defendant submits an affidavit from Joe Boini, an FAA licensed mechanic, who avers that the aircraft delivered to ALG Trust could not have satisfied these requirements because the front landing gear mechanism failed during the vehicle's second flight for TAL. Boini, Aff., at 2. ALG argues that UAL's breach of the requirements of Exhibit I absolves ALG Trust of its obligations under the Lease, and therefore should excuse ALG from liability under the Guarantee. *See Mor–Wood Contractors, Inc. v. Ottinger*, 205 Ill.App.3d 132, 150 Ill.Dec. 444, 450, 562 N.E.2d 1247, 1253 (1990) (party may rescind contract if other party has acted fraudulently or failed to substantially perform its obligations under the contract).

■■■ UAL has two responses to ALG's argument, each of which we find unpersuasive. First, the plaintiff maintains that Lease Supplement No. 1 and the Acceptance Certificate, both of which were signed by ALG Trust's representative, establish that the vehicle complied with the requirements of the Lease at the time of delivery. Thus, UAL argues, there is no genuine dispute as to the condition of the aircraft when possession was transferred to ALG Trust. However, Mr. Boini contends in his affidavit that the alleged defect in the landing gear was not immediately discoverable by ALG Trust or TAL, and that only upon a full and complete inspection of the aircraft—which UAL declined to perform before delivery—could the

---

8. UAL contends that this argument is contrary to the judicial admission made by ALG in paragraph 32 of its cross-claim against TAL, wherein ALG contends that the aircraft leased from UAL was "operated to the material benefit of TAL." *See Keller v. United States*, 58 F.3d 1194, 1198–99 n. 8 (7th Cir.1995) (discussing binding effect of judicial admissions). However, this prior statement does not directly contradict ALG present theory; rather, it appears that ALG seeks payment from TAL for the period of time that the aircraft was operable, but seeks to avoid liability to UAL for the period of time after the alleged defect in the aircraft was discovered. Because ALG's cross-claim does not contain any judicial admissions fatal to its defense of UAL's claims, ALG is not estopped from making the instant argument.

damage be observed. Boini Aff., at 1. Thus, because the defendant presents evidence suggesting that ALG Trust could not readily discover the defect in the landing gear, ALG Trust's certification of the aircraft's condition is not conclusive proof of whether the vehicle actually met the terms of the Lease.

■■■ UAL's second argument is that because of the "AS–IS, WHERE–IS" clause in the Lease, it cannot be held responsible for the condition of the aircraft or the existence of any latent defects. UAL contends that this provision is broad enough to preempt any representations made in other portions of the Lease, and therefore ALG cannot avoid liability under the Guarantee even if the aircraft was delivered to ALG Trust with serious defects. However, UAL's interpretation of the Lease would effectively read Exhibit I out of the contract, and run counter to the rule that "[i]n construing a contract with conflicting provisions, it is presumed that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." *Magnuson v. Schaider*, 183 Ill.App.3d 344, 131 Ill.Dec. 753, 763, 538 N.E.2d 1309, 1319 (1989). Moreover, "where ambiguities exist in a contract between two provisions, the more specific provision relating to the same subject matter controls over the more general provision." *Brzozowski v. Northern Trust Co.*, 248 Ill.App.3d 95, 187 Ill.Dec. 814, 817, 618 N.E.2d 405, 408 (1993). Applying this rule to the instant case leads us to conclude that the more specific provisions dealing with the condition of the aircraft upon delivery, which are contained in Exhibit I, trump the more general terms of the "AS–IS, WHERE–IS" clause. This reading reconciles the two conflicting provisions of the Lease, and does not render any provision superfluous. Thus, although UAL was not responsible for latent defects in the aircraft that did not exist at the time of delivery, it was responsible for furnishing an aircraft that met FAA-approved standards. Accordingly, because we cannot accept UAL's contention that it could not have breached the Lease by delivering a defective aircraft to ALG Trust, and material issues of fact remain in dispute over the condition of the aircraft upon delivery, we deny UAL's motion for summary judgment.

■■■ UAL also argues, with regard to ALG's counterclaim for rescission, that ALG has waived its right to such a remedy because it delayed seeking a rescission until July 1994—six months after UAL sent its first default notice to ALG and one month after UAL filed suit on the Guarantee. In support, UAL cites several cases for the proposition that a claim of rescission must be brought promptly upon the discovery of facts giving rise to the claim. *E.g., Swartz v. Schaub*, 826 F.Supp. 274, 277 (N.D.Ill.1993) (discussing claim of rescission based on fraud); *Vincent v. Vits*, 208 Ill.App.3d 1, 152 Ill.Dec. 941, 944, 566 N.E.2d 818, 821 (1991) (affirming trial court's refusal to grant rescission). However, we cannot agree with UAL that, as a matter of law, ALG has stayed its hand too long. First, it is unclear from the record when ALG discovered facts which would alert it to a claim of rescission, and thus impossible to ascertain whether its delay was justified. Second, it appears that at most ALG waited six months before seeking rescission, a significantly shorter time period than was at issue in other Illinois cases deeming the remedy waived. *See Schoenbrod v. Rosenthal*, 36 Ill.App.2d 112, 183 N.E.2d 188, 192 (1962) (collecting cases). Third, in those cases where a delay of less than one year was deemed too long, the plaintiff sought rescission based on an allegation of *fraud*, not simply on the basis of nonperformance. *See, e.g., Swartz*, 826 F.Supp. at 277. Although we express no opinion as to the ultimate ability of ALG to prevail on its counterclaim for rescission, we cannot at this stage conclude that UAL is entitled to summary judgment.

■■■ Finally, the plaintiff moves for summary judgment on ALG's counterclaim for negligence (Count II), in which the defendant seeks damages for lost profits from the sublease and possible future relationships. UAL argues that because "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort," *Anderson Elec. v. Ledbetter Erection Corp.*, 115 Ill.2d 146, 104 Ill.Dec. 689, 692, 503 N.E.2d 246, 249 (1986),

ALG cannot maintain its negligence counterclaim seeking solely economic damages. We agree. Since ALG claims to have lost only anticipated profits and future commercial opportunities, it cannot maintain a tort claim for negligence. Accordingly, we grant summary judgment for UAL on Count II of ALG's counterclaims.

In sum, we grant summary judgment to UAL on ALG's defenses and counterclaims based on a breach of the implied duty of good faith and fair dealing, and on Count II of ALG's counterclaims. We deny UAL's motion for summary judgment on the remaining defenses and counterclaims.

*B. Count IV of ALG's Counterclaims*

 UAL next moves for judgment on the pleadings on Count IV of ALG's counterclaims pursuant to Federal Rule of Civil Procedure 12(c). A motion under Rule 12(c) that challenges the legal sufficiency of the complaint is evaluated under the same standard as a motion brought under Rule 12(b)(6). *See GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). Therefore, we view all the facts in a light most favorable to the nonmovant, *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir.1993), and grant the motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief," *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

 ALG's fourth counterclaim alleges that by getting TAL to sign "an overreaching adhesion contract of maintenance," UAL is alleged to have intentionally interfered with ALG's "business and contract relationship" with TAL to provide the same services. Counterclaim ¶ 27. UAL contends that these allegations are insufficient to prevail on a claim of intentional interference with contract. In order to state a claim of intentional interference with contract, "a plaintiff must prove: 1) the existence of a valid and enforceable contract between the plaintiff and another party; 2) that the defendant was aware of the contractual relationship; 3) an intentional and unjustified

inducement of a breach of the contract by the defendant; 4) the subsequent breach of the contract by the other party, caused by the defendant's inducement; and 5) damages." *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir.1994). UAL contends that Count II cannot survive because ALG has failed to properly plead the first three of these elements. However, under the Rule 12(c) standard outlined above, we believe that ALG's allegations are sufficient to withstand the instant motion. ALG maintains that UAL interfered with its "contract relationship" with TAL, and that UAL's actions were taken "intention[ally]" and "tortious[ly]." Counterclaim ¶ 27. From these allegations we can infer that ALG had a contract with TAL, UAL knew of this relationship, and UAL intentionally and unjustifiably caused TAL to break its maintenance contract with ALG. Accordingly, we deny UAL's motion for judgment on the pleadings on Count IV of ALG's counterclaims.

### III. Conclusion

For the reasons set forth above, UAL's motion for summary judgment is granted in part and denied in part, and UAL's motion for judgment on the pleadings is denied. It is so ordered.