MARIA PEREZ *et al.*, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants, v. CITICORP MORTGAGE, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—98—0930

Opinion filed November 13, 1998.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Tara L. Goodwin, all of Edelman & Combs, of Chicago, for appellants.

Alan N. Salpeter, Terri A. Mazur, and Michelle V. Dohra, all of Mayer, Brown & Platt, of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

This is a case of first and last impression for Illinois, the Illinois General Assembly having recently addressed the issue about which plaintiffs complain. Unfortunately for plaintiffs, the new statute is prospective in its application.

Plaintiffs Maria and Joaquin Perez filed a class action complaint against defendants Citicorp Mortgage, Inc., and Citibank, F.S.B. (collectively referred to as Citicorp), and John Does 1 through 10, representing the unnamed corporate officers of Citicorp. Plaintiffs based their complaint on the allegation that Citicorp, as a mortgage lender, improperly failed to disclose to plaintiffs, as mortgage borrowers, the circumstances under which borrowers could terminate their payment of private mortgage insurance (PMI). PMI protects the mortgage lender in the event the mortgage borrower defaults.

Upon Citicorp's section 2—615 motions (735 ILCS 5/2—615 (West 1996)), the trial court dismissed plaintiffs' three counts, as alleged in both their original and amended complaints, for failure to state a cause of action. We affirm the order dismissing all three counts of plaintiffs' complaints.

The three issues raised on appeal are whether a mortgage lender's failure to disclose to mortgage borrowers the circumstances under which the payment of PMI premiums can be terminated (1) constitutes an unfair and deceptive practice under the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 1996)), (2) breaches the covenant of good faith and fair dealing, and (3) unjustly enriches the lenders.

■ Although no Illinois court has yet addressed these issues, the

disclosure regarding cancellation of PMI, as urged by plaintiffs-mortgagors, is now required by law under the Mortgage Insurance Limitation and Notification Act (765 ILCS Ann. 930/1 *et seq.* (Smith-Hurd Supp. 1998)). Section 15 of this new act is entitled "transaction disclosure" and specifically provides as follows:

"After July 1, 1998, if a person enters into a transaction to obtain a mortgage for his or her principal residence and private mortgage insurance may be required in connection with that transaction, the mortgagee shall disclose in writing all of the following:

(1) Whether private mortgage insurance will be required to be obtained or maintained with respect to the mortgage.

(2) The period during which the insurance shall be required to be in effect.

(3) The conditions under which the mortgagor may cancel the insurance.

(4) That the mortgagor will be notified not less than annually of an address and telephone number that may be used to contact the mortgagee to determine whether or not the insurance may be terminated and, if the insurance may be terminated, the conditions and procedures for termination." 765 ILCS Ann. 930/15 (Smith-Hurd Supp. 1998).

This act only applies to mortgages obtained on or after July 1, 1998, *i.e.*, the effective date of the new act (765 ILCS Ann. 930/5, 99 (Smith-Hurd Supp. 1998)), and, therefore, does not apply to the present appeal.

On November 27, 1984, plaintiffs entered into a 30-year adjustable rate mortgage in the amount of $27,900 with Citicorp to purchase their home. In the fall of 1986, plaintiffs requested that the mortgage be converted to a 15-year fixed rate mortgage and Citicorp executed the conversion in early 1987. For both mortgage loans, Citicorp required plaintiffs to purchase PMI because they had less than 20% equity in their home at the time of the transactions. The mortgage contract, however, required plaintiffs to pay for PMI "until the Note is paid in full."

By early 1993, plaintiffs' loan was less than 80% of the value of the property, although Citicorp continued to bill plaintiffs for PMI. In May 1996, plaintiffs requested cancellation of their PMI and Citicorp canceled the PMI policy in September 1996.

On March 14, 1997, plaintiffs filed their original complaint with three counts, alleging a violation of the Act (count I), a breach of the covenant of good faith and fair dealing (count II), and unjust enrichment (count III). Citicorp filed a section 2—615 motion to dismiss plaintiffs' complaint. Following a hearing on October 20, 1997, the trial court dismissed counts I and II but allowed plaintiffs leave to

amend their complaint as to these two counts. The trial court dismissed the unjust enrichment count with prejudice.

On November 17, 1997, plaintiffs filed their amended complaint, again alleging violations of the Act (count I) and the covenant of good faith and fair dealing (count II). Also in their amended complaint, plaintiffs specifically incorporated by reference the unjust enrichment count from their original complaint and thereby preserved the right to appeal that count. Thereafter, the trial court granted Citicorp's section 2—615 motion to dismiss for failure to a state a cause of action.

In their amended complaint, plaintiffs stated that Citicorp required mortgagors to purchase PMI where their equity in the property constituted less than 20% of the loan-to-value (LTV) ratio. Plaintiffs alleged that Citicorp was aware that it would sell its residential loans to an investor and retain servicing rights. Investors require PMI coverage for all loans in which the borrower has less than 20% equity in the property and Citicorp's contracts with investors dictate the circumstances under which PMI coverage may be terminated. Once the borrower has at least 20% equity in the property, and certain other conditions are met, investors require servicers, such as Citicorp, to permit mortgagors to cancel their PMI coverage. Plaintiffs maintained that PMI covers only the top 20% of the loan value and, thus, no benefit obtains after the 80% LTV has been reached.

Plaintiffs' complaint further alleged that Citicorp was aware of these conditions for cancellation of PMI for as long as it had serviced mortgages on behalf of investors and did not inform mortgagors, unless they affirmatively requested such information, that it had assigned the borrower's loan or that investors would permit PMI cancellation. Plaintiffs stated that they did not realize that they could cancel PMI until reading a newspaper article relating to lawsuits regarding PMI cancellation.

Plaintiffs further alleged that contracts and policy manuals, which govern the relationship between Citicorp and investors, are not readily available to mortgagors. Mortgagors were unaware of their right to cancel PMI pursuant to the contracts between Citicorp and investors. Plaintiffs are neither parties to the PMI contract nor do they have access to the policy documents. Citicorp assumes responsibility for determining the need for PMI, arranging PMI coverage, and calculating, collecting and paying the amounts due for PMI each year.

Plaintiffs alleged that Citicorp receives "commissions and/or kickbacks from the insurance company which provides the PMI coverage." Citicorp has a practice of charging the same PMI premium over the course of the loan rather than reducing the premiums to reflect the reduced risk by reason of the reduction of the borrower's debt.

Plaintiffs asserted that Citicorp had a duty to disclose the terms and circumstances under which PMI coverage could be terminated because Citicorp was in a position of superior knowledge to the mortgagors and because Citicorp charged and collected PMI coverage.

Plaintiffs alleged that Citicorp deliberately and intentionally failed to disclose to plaintiffs and its other mortgagors the fact that PMI coverage may be canceled, the terms and conditions under which PMI can be canceled, and its written policies regarding PMI cancellation. Furthermore, Citicorp continued to charge mortgagors for PMI coverage after they had more than 20% equity in the homes.

Regarding the statutory fraud count (count I), plaintiffs alleged that they suffered injury because they were unable to compare Citicorp's terms regarding cancellation of PMI with those of other lenders on the terms offered or to make informed decisions regarding the amount of a down payment and/or additional principal payments. Plaintiffs further alleged that the terms of the PMI cancellation constituted a material fact to the mortgagors and the payment of PMI premiums constituted a significant expense to the mortgagors. Citicorp is further alleged to have intended that the mortgagors act in reliance on its failure to disclose the terms under which PMI coverage may be terminated and such failure to disclose is a proscribed unfair and deceptive practice.

In count II, plaintiffs alleged that Citicorp breached the implied covenant of good faith and fair dealing in the contracts with the mortgagors by (1) continuing to bill for the PMI premium after the 80% LTV ratio had been reached; (2) collecting unnecessary PMI premiums from the mortgagors, and (3) failing to disclose the terms and conditions under which PMI can be terminated.

The unjust enrichment count in the original complaint (count III) alleged that Citicorp obtained impermissible profits from its mortgagors' PMI policies by failing to disclose the circumstances under which the mortgagors could avoid, minimize or terminate payment of PMI premiums. Plaintiffs alleged that these profits obtained by Citicorp wrongfully conferred a benefit upon Citicorp and to allow Citicorp to retain such benefit would be inequitable.

On February 26, 1998, the trial court granted Citicorp's section 2—615 motion to dismiss the amended complaint with prejudice. Our review of a dismissal under section 2—615 is *de novo*. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). We must take as true all well-pled allegations of fact contained in the complaint and construe all reasonable inferences therefrom in favor of the plaintiff. *Vernon*, 179 Ill. 2d at 341. A section 2—615 motion attacks the legal sufficiency of a complaint and our inquiry under these circumstances is whether the al-

legations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon*, 179 Ill. 2d at 344.

First, plaintiffs assert that their complaint stated a cause of action for violation of the Act, arguing that Citicorp engaged in an unfair and deceptive practice by its concealment, omission and suppression of material facts concerning the right to cancel PMI at the request of the mortgagors and by requiring mortgagors to pay for an unnecessary and unwanted product. Plaintiffs maintain that PMI serves no purpose where the value of the property is sufficient to support the loan and, thus, is useless. Plaintiffs further argue that the terms of their mortgage contract do not preclude their claims because the issue is *not* what the mortgage says but Citicorp's concealment of its policy and practice. Moreover, the cancellation was not prohibited by the mortgage.

Citicorp contends that plaintiffs failed to plead any unfair or deceptive conduct on the part of Citicorp. Citicorp argues that plaintiffs have no "right" to cancel PMI and, thus, have no "right" to disclosure of cancellation information. The mortgage agreement fully discloses and expressly requires that plaintiffs pay PMI "until the Note is paid in full." Citicorp further argues that requiring life-of-loan PMI is not an "unfair practice" and, contrary to plaintiffs' claim, the PMI policy provides valuable insurance coverage until the loan is fully repaid. We agree with Citicorp.

The instant mortgage specifically provides that plaintiffs pay PMI premiums for the life of the loan. Paragraph two of the mortgage provides in relevant part as follows:

> "Subject to applicable law or to a written waiver by Lender, *Borrower shall pay to Lender* on the day monthly payments are due under the Note, *until the Note is paid in full*, a sum ('Funds') equal to one-twelfth of: (a) yearly taxes and assessments imposed by governmental bodies which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; (d) *yearly mortgage insurance premiums, if any*." (Emphasis added.)

Paragraph seven of the mortgage provides in relevant part as follows:

> "If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law."

The note and mortgage do not disclose the conditions under which PMI may be terminated.

420

The PMI policy expressly confers 20% coverage to the lender for the life of the loan in the event the borrower defaults, regardless of the amount of equity accrued by the borrower. If the borrower defaults, the amount the lender would obtain depends primarily on the amount of the unpaid balance. The policy states:

> "The amount of loss payable to the insured [Citicorp] shall be limited to the unpaid principal due under the mortgage loan agreement, accumulated interest computed at the contractual rate provided therein through the date of the tender of conveyance (penalty interest excluded), real estate taxes and hazard insurance premiums necessarily advanced by the insured, any reasonable and necessary expenses incurred by the insured in the preservation of the mortgaged real estate, and all necessary expenses of any appropriate proceedings, including court costs and reasonable attorneys' fees not exceeding three per cent (3%)of such unpaid principal balance and accumulated interest."

As a mortgage lender, Citicorp is subject to the Act (*Mid-America National Bank v. First Savings & Loan Ass'n*, 161 Ill. App. 3d 531, 540 (1987) (the Act may be applied to mortgage lenders)), which provides as follows:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1996).

The elements of a claim under section 2 of the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996); *Elson v. State Farm Fire & Casualty Co.*, 295 Ill. App. 3d 1, 14 (1998); *First Midwest Bank, N.A. v. Sparks*, 289 Ill. App. 3d 252, 257 (1997).

Consumer fraud includes an omission or concealment of a material fact in the conduct of trade or commerce. *Connick*, 174 Ill. 2d at 504. "Concealment is actionable where it is employed as a device to mislead and the concealed fact must be such that, had the other party been aware of it, he would have acted differently." *First Midwest Bank*, 289 Ill. App. 3d at 257. To state a valid claim based on an omis-

sion or concealment under the Act, it is not necessary to plead a common law duty to disclose (*Connick*, 174 Ill. 2d at 505), nor is actual reliance required (*Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992)).

■ Whether conduct is unfair under the Act is determined on a case-by-case basis. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313 (1996). To establish unfair conduct, the court looks to "(1) whether the practice offends public policy; (2) whether it is oppressive; and (3) whether it causes the consumer substantial injury." *Saunders*, 278 Ill. App. 3d at 313, citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972).

The deceptive or unfair act alleged by plaintiffs is the failure of Citicorp to inform them of the terms and conditions upon which the PMI may be canceled. Although no Illinois case has been found on this issue, courts in other states have held squarely against plaintiffs' position. *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393 (N.D. Ala. 1997); *Hinton v. Federal National Mortgage Ass'n*, 945 F. Supp. 1052 (S.D. Tex. 1996); *May v. Old Kent Bank & Trust Co.*, No. 95—2697 (Mich. Cir. Ct., July 15, 1996); *Siegl v. Twin City Federal Mortgage Corp.*, No. CT 95—2306 (Minn. Dist. Ct. July 26, 1995); *Blair v. Source One Mortgage Services Corp.*, 925 F. Supp. 617 (D. Minn. 1996); *Rossbach v. FBS Mortgage Corp.*, Nos. C3—97—1622, C9—97—1852 (Minn. App. April 7, 1998). Plaintiffs do not, and indeed cannot, offer any viable distinctions between their case and the above-cited cases. We decline plaintiffs' invitation to depart from their persuasive holdings.

As succinctly stated in *Deerman*:

> "Although plaintiffs [home mortgagors] seek relief under a variety of legal theories, their obligations to pay for mortgage insurance premiums rests ultimately on the terms of the mortgage contracts they signed. Those instruments contemplate life-of-loan mortgage insurance, and they do not provide a specific right of cancellation to the borrower." *Deerman*, 955 F. Supp. at 1397, citing *Hinton*, 945 F. Supp. at 1056, *May*, No. 95—2697, slip op. at 2, and *Siegl*, CT—95—2306, slip op. at 13.

Likewise, the instant mortgage contract does not provide any obligation on the part of the lender to cancel PMI at any point in time and, instead, requires that PMI must be paid "until the Note is paid in full." See *Deerman*, 955 F. Supp. at 1402 (same language). Similarly, in the instant case, as in *Deerman*, "nothing in the mortgage contracts *** provides for notice to the borrowers about how PMI might be canceled." *Deerman*, 955 F. Supp. at 1403.

■ To find for plaintiffs, this court would have to require, by judicial fiat, a lender to disclose information about the possible subsequent cancellation of PMI at the time the mortgage was executed. In response to this argument, the *May* court "respectfully decline[d] the implied invitation to create such a requirement" and found that "[i]f such is to be done, it should be by the legislators and/or regulators." *May*, No. 95—2697—CK, slip op. at 3. In fact, the Illinois legislature has done just that in the enactment of the Mortgage Insurance Limitation and Notification Act. 765 ILCS Ann. 930/15 (Smith-Hurd Supp. 1998) (eff. July 1, 1998).

Moreover, to accept plaintiffs' position, this court would be rewriting mortgage contracts. As stated in *Deerman*: "While the notion that borrowers at some appropriate time should be relieved of their obligations to pay for mortgage insurance premiums may have some equitable appeal, the standard form mortgages, which plaintiffs signed, do not provide for such a right. No authority has been presented that would warrant the court rewriting literally thousands, if not millions, of mortgage contracts." *Deerman*, 955 F. Supp. at 1406 (plaintiffs alleged a putative nationwide class action, which accounts for the references to "thousands" and "millions").

Plaintiffs direct our attention to two cases to support their position: *Racher v. GMAC Mortgage Corp.*, No. 95—4588 (D.N.J. May 8, 1996), and *Walts v. First Union Mortgage Corp.*, No. 605222/96 (N.Y. Cty. S. Ct. June 17, 1998). Both cases are readily distinguishable. In *Racher*, the federal district court remanded plaintiffs' putative class action to state court because the complaint failed to establish federal jurisdiction. Obviously, since the plaintiffs' case was decided on a jurisdictional issue (the amount in controversy was less than $50,000), the *Racher* court did not address, let alone decide, the merits or substance of plaintiffs' claims.

In *Walts*, the trial court allowed the plaintiff-borrowers' claim based on New York's consumer protection statute to withstand a dismissal motion by the lender. The mortgage contract at issue "provided that the obligation to continue to pay PMI would continue so long as required by law." *Walts*, slip op. at 9. New York law required the termination of mortgage insurance when the LTV ratio reached 75%. *Walts*, slip op. at 5. Contrary to New York law, the lender in *Walts* continued to bill plaintiff for PMI premiums after the LTV ratio was less than 75%. *Walts*, slip op. at 9. Unlike New York, Illinois has no such law that requires termination of mortgage insurance when a particular circumstance occurs. Even the new law effective July 1, 1998, only requires that the mortgagor be notified about the conditions and procedures for termination of insurance, but does not mention any specific terms.

We find that a lender's failure to inform mortgagors that cancellation of PMI might be permitted at the discretion of the mortgage lender or servicer, notwithstanding the clear obligation stated in their mortgage contracts, does not constitute a deceptive or unfair practice under the Act. The very nature of PMI is to protect the lender in the event of default by the borrower. A lender makes a credit risk judgment at the outset of a loan, including whether PMI is needed, and necessarily assesses the need for PMI based on several factors, including, but not limited to, the down payment and creditworthiness of a borrower. Moreover, in the present case, the clear terms of the mortgage require payment of PMI premiums for the life of the loan and the PMI policy confers a financial benefit to the lender throughout the life of the loan, notwithstanding the fact that the dollar value of the benefit decreases proportionally with the decrease in the amount of unpaid balance. PMI protects the lender against default and does not automatically become worthless based solely on the amount of equity a borrower has in a home. The amount of a borrower's equity does not necessarily protect a lender from a borrower's default, as a continued need for PMI may be prudent in some cases. Circumstances, including the personal finances of a borrower and the value of a home, inevitably change and, unfortunately, not always for the better.

In light of our holding that plaintiffs failed to state a cause of action under the Act, we need not address the alternative argument presented by Citicorp, contending that its alleged compliance with the Truth in Lending Act (15 U.S.C. § 1601 *et seq.* (1994)) is a complete defense to liability under the Act.

Second, plaintiffs assert that their complaint stated a cause of action for breach of the covenant of good faith and fair dealing because the mortgage contract expressly permits termination of PMI upon "written agreement" and Citicorp indeed canceled PMI upon plaintiffs' request. In their complaint, plaintiffs alleged that Citicorp had discretion to determine the need for PMI coverage, to obtain PMI coverage, to cancel PMI coverage, and to disclose its policies regarding cancellation of PMI. Plaintiffs argue that Citicorp's concealment of its PMI termination policy was unreasonable.

■ Every contract, as a matter of law, includes a duty of good faith and fair dealing (*Saunders*, 278 Ill. App. 3d at 315; *Northern Trust v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995) ("[e]very contract contains an implied covenant of good faith and fair dealing")), absent an express disavowal by the parties (*Citicorp Savings v. Rucker*, 295 Ill. App. 3d 801, 807 (1998)).

The obligation of good faith and fair dealing is a derivative principle of contract law and is essentially used as a construction aid

in determining the intent of the parties where an instrument is susceptible of two conflicting constructions. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105 (1993); see also *Rucker*, 295 Ill. App. 3d at 807 (same).

■ These implied covenants are generally implicated where one party to a contract is given broad discretion in performance. *Resolution Trust*, 248 Ill. App. 3d at 112. "The doctrine of good faith then requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Resolution Trust*, 248 Ill. App. 3d at 112.

Notwithstanding these implied covenants, however, "[p]arties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith." *Resolution Trust*, 248 Ill. App. 3d at 113. "Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties." *Resolution Trust*, 248 Ill. App. 3d at 113.

■ The express terms of the mortgage contract and attendant documents clearly set forth the parties' obligations regarding PMI, which was indisputably a requirement for plaintiffs' obtaining the mortgage. The fact that PMI *may* be reconsidered at a later date does not abrogate, in any way, the terms of the mortgage contract, which specifically imposes payment of PMI for the life of the loan. As stated in *Resolution Trust*:

> "[N]othing in the mortgage documents requires a lender to soften its position or its heart.
> ***
> While we may entertain sympathy for the mortgagor desperately seeking to vary the terms of the security instruments, we should be tempered by remembering that lender and borrower enjoy the freedom of the marketplace to negotiate whatever they wisely or foolishly believe is in their best interests and a court is powerless to alter the clear terms of a contract." *Resolution Trust*, 248 Ill. App. 3d at 112.

To the extent that Citicorp can be viewed to have exercised discretion in applying the terms of the mortgage contract, such discretion was not exercised arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. See *Saunders*, 278 Ill. App. 3d at 315 ("the express agreement between the parties clearly controls what expectations are reasonable"). At plaintiffs' request, Citicorp canceled PMI premiums, even though the mortgage contract stated that PMI payments must be made for the life of the loan.

Theoretically, a bank may waive or defer any fees, including payments, interest, or points on a mortgage. Citicorp followed the terms of the mortgage contract as to its rights and obligations regarding the collection of PMI premiums and acquiesced to plaintiffs' request to terminate PMI premiums. We cannot find such conduct to constitute a breach of the implied covenant of good faith and fair dealing.

■ Lastly, we find that plaintiffs cannot state a cause of action based on unjust enrichment. The theory of unjust enrichment is based on a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties. *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992) (unjust enrichment claim was properly dismissed where an express contract existed); *Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.*, 104 Ill. App. 3d 357 (1982) (the express contract barred the claim in quasi-contract, even though the plaintiff rendered additional services beyond those provided in the contract). In the present case, a contract indisputably existed between the parties and, thus, a quasi-contract cause of action cannot stand.

For all of the foregoing reasons, the judgment of the circuit court dismissing plaintiffs' complaint is affirmed.

Affirmed.

HARTMAN and THEIS, JJ., concur.