# Illinois Official Reports

## Appellate Court

*Chicago Title Insurance Co. v. Teachers' Retirement System*,
2014 IL App (1st) 131452

| | |
|---|---|
| Appellate Court Caption | CHICAGO TITLE INSURANCE COMPANY, Successor by Merger to Ticor Title Insurance Company, as Subrogee for BankFinancial Corporation; LECHNER AND SONS II, LLC, Plaintiffs-Appellants, v. THE TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-13-1452 |
| Filed<br>Rehearing denied | February 18, 2014<br>March 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant, an agency of the State of Illinois, sold a parcel of real estate to plaintiff pursuant to a contract providing that if defendant paid any real estate taxes on the property and those taxes were refunded to defendant upon the grant of defendant's application for a real estate exemption, defendant would be entitled to keep the refunded taxes, plaintiffs were not entitled to recover the expenses incurred in responding to a notice that even though defendant's exemption had been granted, the taxes were also sold as delinquent several years after the sale and plaintiffs paid to prevent the property from being sold for the delinquent taxes, since the contract absolved defendant of any responsibility for the expenses plaintiffs incurred, and defendant did not do anything wrong and was not unjustly enriched; therefore, plaintiffs' action against defendant was properly dismissed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-23170; the Hon. Kathleen Pantle, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Fidelity National Law Group, of Chicago (Barry C. Brotine, of counsel), for appellants. |
| | Holland & Knight, LLP, of Chicago (Jonathan E. Strouse, James T. Mueller, and Michael A. Grill, of counsel), for appellee. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Hoffman and Cunningham concurred in the judgment and opinion. |

## OPINION

¶ 1 Real estate taxes in Illinois are paid annually–not for the current year, but for the preceding year. See generally Jeffrey S. Blumenthal & David R. Gray, Jr., *Tax Bills and Payments*, in Real Estate Taxation § 10.3 (Ill. Inst. for Cont. Legal Educ. 2012). Unpaid real estate taxes remain a lien on the property until paid. 35 ILCS 200/21-75 (West 2010). Properties with delinquent taxes are subject to possible sale at auction. *Id.* Accordingly, careful buyers of real estate will verify that the taxes are paid up, and contractual provisions will address how taxes for the immediately preceding and current years will be estimated and split between the parties at closing. In the ideal world, buyers and sellers walk away from closings never having to deal with each other again regarding the taxes. This case presents a textbook example of how Murphy's Law came into play after what seemed to be a routine real estate closing. The court below rejected the buyer's attempts to recover money it paid to rescue the property from loss at a tax sale. We affirm.

¶ 2 BACKGROUND

¶ 3 The facts are generally undisputed. The defendant, Teachers' Retirement System of the State of Illinois (TRS), an agency of the State of Illinois,[1] bought the subject property, located in Mount Prospect, in 1991. In 2002, it sold the property to the plaintiff, Lechner and Sons II, LLC (Lechner). The sale to Lechner was governed by a 16-page contract containing a single-spaced provision regarding real estate taxes entitled "PRORATIONS" that covered most of a page. The provision stated that "real estate taxes for 2000 (to the extent unpaid) and 2001 \*\*\*, if any, shall be prorated as of the Closing Date." In the contract, Lechner

---

[1]TRS is created by section 16-101 of the Illinois Pension Code. See 40 ILCS 5/16-101 (West 2010); see also *Jones v. Jones-Blythe Construction Co.*, 150 Ill. App. 3d 53, 54 (1986) (premises liability claim against TRS must be brought in the Court of Claims because it was a "claim against the State").

acknowledged that TRS was applying to certain governmental authorities for an exemption which "may eliminate or reduce the amount of Taxes assessed against" the property. Finally, as is particularly relevant to the dispute before us, Lechner agreed that if TRS received any tax refund directly from an applicable governmental taxing authority, then TRS would be entitled to retain the refund.

¶ 4      At closing, TRS issued a warranty deed to Lechner, asserting that it conveyed good title subject only to taxes which were not yet due and payable, and to some other exceptions not relevant here. The 2002 title insurance commitment stated that taxes for 2000 and "prior years" were "marked exempt on the [county] collector's warrant book," and that "[s]atisfactory evidence should be furnished to [the title insurer] showing that the subject land is entitled to said exemption." Lechner later obtained a mortgage on the property from codefendant BankFinancial.

¶ 5      Real estate owned by governmental bodies is not automatically exempt from property tax. Governmental bodies must demonstrate to the county board of review and the Illinois Department of Revenue (DOR) that their property is exempt because all property of the particular government is automatically exempt regardless of use, or the property is used for governmental purposes. 35 ILCS 200/16-70, 16-95(1), 16-115 (West 2010). Time delays in this process often force the governmental body to pay the taxes and seek a refund later when its exemption is finally approved, which is what occurred here.

¶ 6      In 1993, TRS had applied to the DOR for an exemption of the subject property from real estate taxes pursuant to then-section 19.5 of the Revenue Act of 1939 (35 ILCS 205/19.5 (West 1992) (now 35 ILCS 200/15-55(a) (West 2010))), which provided that "[a]ll property belonging to the State of Illinois" is exempt from real estate taxation. The Village of Mount Prospect (the Village) objected to TRS's application, and the matter proceeded to a formal hearing. In 1997, the DOR overruled the Village's objection and accepted the recommendation of an administrative law judge (ALJ) that the property be declared exempt from taxes for the tax year 1993. The ALJ issued a detailed 17-page opinion finding that the property in question, which was vacant, was exempt from property taxes unless it was actually leased to a private entity. In so holding, the ALJ found that TRS's real estate was exempt from property tax because TRS was an agency of the State of Illinois, and was thus exempt regardless of whether TRS was actually using the property, because the sole test for the exemption of state-owned property is merely ownership. *Teachers' Retirement System v. Department of Revenue*, Nos. 93-16-1323, 93-16-1396, order at 14 (Ill. Dept. of Revenue Feb. 28, 1997). The ALJ noted, however, that if TRS leased the property to a private entity, it could be taxed. *Id.* at 16-17.

¶ 7      In 2005, the Cook County assessor issued certificates of error (see 35 ILCS 200/14-15 (West 2010)) reducing the taxes on the property for the three years in question to zero. In 2007, based on those certificates of error, the Cook County treasurer issued three tax refund checks to TRS, one for each of the tax years at issue, totaling $138,353.24.

¶ 8      In 2012, 10 years after buying the property, Lechner received a notice of sale and redemption rights, commonly known as a "Take Notice" form (see 35 ILCS 200/22-5 (West 2010)), stating the property had been sold for delinquent taxes to a tax buyer by the name of "AAA Funding, Inc." The notice stated that the owner had until July 9, 2012, to redeem the property from the sale by paying taxes, interest, penalties, and costs totaling over $277,000. The allegedly delinquent taxes were for 1992, 1995, and 1996, all years during which TRS had owned the property. Lechner's title insurer, codefendant Chicago Title Insurance Company

(CTIC), paid AAA $70,000 for an assignment of its certificate of title.[2] With the certificate of sale in hand, CTIC avoided transfer of the property to AAA and took some additional steps to obtain a tax deed to Lechner's property, with the goal of assigning its interest back to Lechner at some point.

¶ 9     In 2012, Lechner, CTIC, and BankFinancial[3] sued TRS and various governmental officials to: (1) enjoin the government officials from selling the property for delinquent taxes; and (2) recover not only the $70,000 it paid the tax buyer, but additional monies it would incur to clear title in the future. Lechner dismissed the governmental officials from the lawsuit for reasons not revealed by the record, leaving an amended two-count complaint against only TRS. The first count claimed that TRS was unjustly enriched because Lechner paid a debt for which TRS was rightfully responsible. The second count sought a declaratory judgment that TRS was responsible to pay all future costs Lechner would incur to clear title. According to the complaint, the official Cook County warrant books (see 35 ILCS 200/18-250(c) (West 2010)) still show that the taxes for these years are delinquent. Nothing in the record explains the discrepancy between the warrant books on the one hand and the certificate of error and refund checks on the other.

¶ 10    TRS moved to dismiss the amended complaint under section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). TRS's motion essentially contended that the taxes for the property were never delinquent at all. In doing so, TRS implied that the various county officials involved in the taxing process erroneously listed the property on the list of delinquent parcels subject to judicial sale through some sort of clerical error.

¶ 11    The trial court issued a written opinion granting the motion and dismissing the case with prejudice. The court found that TRS was not unjustly enriched to plaintiff's detriment because it had actually paid the real estate taxes at issue and that it rightfully kept the refund checks issued pursuant to the certificates of error. The trial court dismissed the remaining declaratory judgment count on the same basis, finding that "[a]s TRS has done nothing wrong, there is no basis on which to order TRS to pay anything to plaintiffs." This appeal followed.

¶ 12                                        ANALYSIS

¶ 13    TRS's motion to dismiss did not cite which subsection of section 2-619 it was based on, but the trial court found, as do we, that it is properly classified as being brought under section 2-619(9), which allows dismissal if "the claim asserted against defendant is barred by other affirmative matter." 735 ILCS 5/2-619(9) (West 2010). When ruling on a motion to dismiss under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Coghlan v.*

_____

[2]Nothing in the record indicates that, before paying AAA to bail out the property, Lechner or the insurer ever pursued any remedies before the court which had authorized the sale on the basis that the property was actually exempt from taxes during those years. See 35 ILCS 200/21-310(a)(1) (West 2010) (allowing court to declare sale in error if property was "not subject to taxation"); 35 ILCS 200/21-310(a)(7) (West 2010) (same, if property was owned by the State of Illinois). Similarly, nothing in the record indicates why Lechner did not pursue a claim for breach of the warranty contained in the underlying deed.

[3]For simplicity, we refer to all three collectively as "Lechner."

- 4 -

*Beck*, 2013 IL App (1st) 120891, ¶ 24. As a result, a motion to dismiss should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.* Section 2-619 motions present issues of law which we review *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49 (2006).

¶ 14        Lechner suggests there are issues of fact precluding resolution of the case on a section 2-619 motion, and that the documents TRS submitted with the motion are irrelevant. The documents of which Lechner complains are all governmental records of which the court can take judicial notice. Ill. R. Evid. 803(8), (14) (eff. Apr. 26, 2012). Lechner does not dispute the authenticity of these documents and they are certainly relevant to the issues presented. As noted above, however, the record does not explain how the records of three different county officials point to completely different answers regarding whether the property was taxable. Lechner argues that the trial court's ruling deprived it of the chance to get to the bottom of that mystery and "ascertain[ ] the truth as to how the property was sold at auction."

¶ 15        It is indeed strange that county officials would still list the property on the delinquent tax roll and sell it for back taxes even after receiving a DOR exemption ruling, issuing certificates of error, and refunding a substantial amount of taxes. Lechner contends that the "evidence is clear" that the taxes were not paid. However, it is not so clear at all. At best, there is a conflict between the certificates of error and the warrant books regarding whether the taxes were delinquent. While Lechner never presented the warrant books to the circuit court in the briefing on the motion, we must take as true its allegation that the warrant books showed the property as tax-delinquent. A section 2-619 motion cannot be used to contradict a well-pled allegation of fact in the complaint. *Provenzale v. Forister*, 318 Ill. App. 3d 869, 879 (2001) (section 2-619 motion concedes the truth of all well-pled allegations in the complaint; "evidentiary material in support of a section 2-619 motion may not be submitted for the purpose of contradicting well-pleaded facts in the complaint").

¶ 16        With those principles in mind, we turn to whether the court below properly dismissed the second amended complaint. Our supreme court has noted:

> "Although the circuit court dismissed plaintiff's complaint for a different reason, the reasons given for a judgment or order are not material if the judgment or order itself is correct. [Citation.] 'It is the judgment and not what else may have been said by the lower court that is on appeal to a court of review. [Citations.] The reviewing court is not bound to accept the reasons given by the trial court for its judgment ***.' [Citation.] Rather, a reviewing court 'can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct.' [Citation.]" *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 357 (2006).

The trial court relied strongly on the certificate of error and the refund checks to find that the taxes had been paid. Like the court below, we believe the amended complaint should be dismissed, but employ a different analysis to reach that result.

¶ 17        Under the doctrine of unjust enrichment, a plaintiff must show that the defendant has "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Unjust enrichment is not an independent cause of action. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009). Rather, it is a remedy for "unlawful or improper conduct as

- 5 -

defined by law, such as fraud, duress or undue influence" (internal quotation marks omitted) (*Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492 (1995)), or, alternatively, it may be based on contracts which are implied in law (*Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 425 (1998)). However, this theory is inapplicable when an express contract, oral or written, governs the parties' relationship. *Id.*

¶ 18 Even though there may be an issue of fact regarding whether the property was taxable, there is no dispute regarding: (1) the language of real the estate sale contract; and (2) the fact that the county refunded taxes to TRS which it had paid in the first instance. We find that unjust enrichment is not available as a remedy here because there was a written contract governing the payment of the taxes. The contract contained a specific provision stating that TRS would be able to keep any taxes refunded to it upon approval of its exemption. Additionally, the refund checks demonstrated that TRS had paid the taxes. Its refusal to do so a second time–10 years after selling the property–hardly constituted misconduct of such an egregious nature as to invoke the extraordinary remedies available to victims of unjust enrichment. This is particularly so in light of the other remedies which were available to Lechner.

¶ 19 In the declaratory judgment count of the second amended complaint, Lechner seeks a determination that TRS is responsible to pay Lechner for all future expenses related to the allegedly delinquent property tax expenses. Because the contract absolves TRS of responsibility for these expenses, the declaratory judgment count falls along with the unjust enrichment count.

¶ 20                                                        CONCLUSION

¶ 21 For the foregoing reasons, we affirm the order of the circuit court dismissing the second amended complaint.

¶ 22 Affirmed.